GABRIELA KIPNIS (CA Bar No. 284965)
NATALIE S. CHA (CA Bar No. 327869)
**CONRAD | METLITZKY | KANE LLP**
217 Leidesdorff Street
San Francisco, CA 94111
Tel:    (415) 343-7100
Email: gkipnis@conmetkane.com
Email: ncha@conmetkane.com


JOSEPH M. TERRY (*pro hac vice*)
JESSE T. SMALLWOOD (*pro hac vice*)
JOHN M. MCNICHOLS (*pro hac vice*)
**WILLIAMS & CONNOLLY LLP**
680 Maine Ave. SW
Washington, DC 20024
Tel:    (202) 434-5000
Fax:    (202) 434-5029
Email: jterry@wc.com
Email: jsmallwood@wc.com
Email: jmcnichols@wc.com


Attorneys for Defendants
COINBASE GLOBAL, INC.,
COINBASE INC., AND COINBASE
BERMUDA SERVICES LIMITED

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| BRIAN CAROLUS, individually and on behalf of all others similarly situated, | Case No. 3:25-CV-03089-CRB |
| Plaintiff, | **DEFENDANTS COINBASE, GLOBAL, INC., COINBASE, INC., AND COINBASE BERMUDA SERVICES, LTD.'S REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS** |
| v. | |
| COINBASE GLOBAL, INC., COINBASE INC., AND COINBASE BERMUDA SERVICES LIMITED, | |
| Defendants. | Date:         September 19, 2025 |
| | Time:        10:00 a.m. |
| | Judge:       Hon. Charles R. Breyer |
| | Location:   Remotely via videoconference |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF CONTENTS

I.      INTRODUCTION AND SUMMARY OF ARGUMENT.....................................................1

II.     ARGUMENT ............................................................................................................................2

        A.      The User Agreement's Class Action Waiver Is Valid And Enforceable..................2

                1.      *Heckman* Is Inapposite Because It Addressed a Materially Different
                        Arbitration Clause, and the *Discover Bank* Rule Remains Preempted........2

                2.      Even if the *Discover Bank* Rule Were Not Preempted, The User
                        Agreement's Class Waiver Provision Would Not Be Unconscionable. ......6

        B.      Plaintiff's Other Unconscionability Arguments Also Fail......................................8

                1.      There is No Procedural Unconscionability .................................................8

                2.      There is No Substantive Unconscionability................................................9

III.    CONCLUSION.......................................................................................................................13

i

# TABLE OF AUTHORITIES

## CASES

*Acosta v. Kerrigan*,
  150 Cal. App.4th 1124 (2007) ........................................................................................13

*Aggarwal v. Coinbase, Inc.*,
  685 F. Supp. 3d 867 (N.D. Cal. 2023) ..........................................................................9, 10

*Alfia v. Coinbase Global, Inc.*,
  2022 WL 3205036 (N.D. Cal. July 22, 2022)......................................................................3

*Arguelles-Romero v. Superior Ct.*,
  184 Cal. App.4th 825 (2010) ............................................................................................7

*AT&T Mobility LLC v. Concepcion*,
  563 U.S. 333 (2011) ..........................................................................................................3

*Bernstein v. Coinbase Global, Inc.*,
  1:25-cv-5313 (N.D. Ill.) ..............................................................................................12, 13

*Bielski v. Coinbase, Inc.*,
  87 F.4th 1003 (9th Cir. 2023) .................................................................................. *passim*

*Brashear v. Halliburton Energy Services, Inc.*,
  2020 WL 4596116 (E.D. Cal. Aug. 11, 2020) ..................................................................12

*DiMarco v. Chaney*,
  31 Cal. App.4th 1809 (1995) ...........................................................................................13

*Discover Bank v. Superior Court*,
  36 Cal.4th 148 (2005) ............................................................................................ *passim*

*Donovan v. Coinbase Global, Inc.*,
  2023 WL 2124776 (N.D. Cal. Jan. 6, 2023) ..................................................................9, 10

*Gentry v. Superior Court*,
  42 Cal.4th 443 (2007) ........................................................................................................7

*Heckman v. Live Nation Entertainment, Inc.*,
  120 F.4th 670 (9th Cir. 2024) ................................................................................... *passim*

*Holley-Gallegly v. TA Operating, LLC*,
  74 F.4th 997 (9th Cir. 2023) .........................................................................................2, 10

*Independent Association of Mailbox Center Owners, Inc. v. Superior Court*,
  133 Cal. App.4th 396 (2005) ............................................................................................7

*Ingle v. Circuit City Stores, Inc.*,
  328 F.3d 1165 (9th Cir. 2003) .........................................................................................12

ii

*Jeong v. Nexo Capital Inc.*,
  2023 WL 2717255 (N.D. Cal. Mar. 29, 2023)......................................................................7

*Jones v. Starz Enters., LLC*,
  129 F.4th 1176 (9th Cir. 2025) ....................................................................................1, 5, 11

*Kamath v. Coinbase, Inc.*,
  2024 WL 950163 (N.D. Cal. Mar. 5, 2024).....................................................................9, 10

*Kohler v. Whaleco, Inc.*,
  757 F. Supp. 3d 1112 (S.D. Cal. 2024).........................................................................10, 11

*Lifescan, Inc. v. Premier Diabetic Services, Inc.*,
  363 F.3d 1010 (9th Cir. 2004) .............................................................................................13

*Little v. Auto Stiegler, Inc.*,
  29 Cal.4th 1064 (2003) ........................................................................................................14

*MacClelland v. Cellco P'ship*,
  609 F. Supp. 3d 1024 (N.D. Cal. 2022) ...............................................................................11

*Massie v. Ralphs Grocery Co.*
  2012 WL 1078562 (Cal. Ct. App. Apr. 2, 2012) (Opp. 8)....................................................7

*Mastrobuono v. Shearson Lehman Hutton, Inc.*,
  514 U.S. 52 (1995)..................................................................................................................3

*Pandolfi v. AviaGames Inc.*,
  2024 WL 4051754 (N.D. Cal. Sept. 4, 2024) ......................................................................11

*Pearl v. Coinbase Global, Inc.*,
  2023 WL 1769190 (N.D. Cal. Feb. 3, 2023) ....................................................................9, 10

*Pilon v. Discovery Commc'ns, LLC*,
  769 F. Supp. 3d 273 (S.D.N.Y. 2025)..................................................................................11

*Ramirez v. Charter Communications, Inc.*,
  16 Cal.5th 478 (2024) ..........................................................................................................13

*Sanchez v. Valencia Holding Co.*,
  61 Cal.4th 899 (2015) ..........................................................................................................13

*Wallrich v. Samsung Elecs. Am., Inc.*,
  106 F.4th 609 (7th Cir. 2024) ..............................................................................................12

**OTHER AUTHORITIES**

Federal Arbitration Act ............................................................................................... *passim*

AAA Mass Arbitration Supplementary Rules ............................................................. *passim*

iii

DEFENDANTS' REPLY ISO MOTION TO COMPEL
                                                         ARBITRATION & STAY PROCEEDINGS

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff does not dispute that: (1) he executed the Coinbase User Agreement; (2) the User Agreement contains an arbitration clause with a clear and unmistakable delegation provision; and (3) the Ninth Circuit, in *Bielski v. Coinbase, Inc.*, 87 F.4th 1003 (9th Cir. 2023), upheld the enforceability of the delegation provision in the User Agreement.  Plaintiff nonetheless contends that changes to the User Agreement that post-date the version at issue in *Bielski*, as well as the Ninth Circuit's recent decision in *Heckman v. Live Nation Entertainment, Inc.*, 120 F.4th 670 (9th Cir. 2024), allow him to escape *Bielski*'s ruling.  Plaintiff is wrong in both respects.

*First*, Plaintiff argues that, under the Ninth Circuit's recent decision in *Heckman*, the User Agreement's "batch" arbitration provision, which addresses situations (not present here) where 100 or more claims are brought by the same counsel, eliminates the preemptive effect of the Federal Arbitration Act ("FAA").  Absent the FAA's protective cloak, Plaintiff says, the User Agreement is unconscionable under the California Supreme Court's decision in *Discover Bank v. Superior Court*, 36 Cal.4th 148 (2005) because of its class-action waiver provision.  Not so.  *Heckman* is worlds apart from this case.  And even if *Heckman* did control, the User Agreement's class action waiver would survive under *Discover Bank*.

*Heckman* held that the FAA protects only "individual" and "bilateral" arbitration, not "class-wide" arbitration.  120 F.4th at 689–90.  Because the mass arbitration protocol in *Heckman* resolved claims "in a 'class or representative' fashion," it was "not arbitration envisioned by the FAA," and it lost the FAA's protection.  *Id.* at 683, 690.  Coinbase's batch arbitration provision, in contrast, fully preserves the right to individual and bilateral adjudication because—among other reasons—it lacks a "representative feature," where "an individual brings claims *on behalf of* others."  *Jones v. Starz Enters., LLC*, 129 F.4th 1176, 1182 (9th Cir. 2025).  This "critical element" of non-FAA-protected class-action arbitration is absent here.  *Id.*  Plaintiff ignores entirely the Ninth Circuit's recent decision in *Jones*, in which the court distinguished the mass arbitration provision in *Heckman* from a provision that merely consolidated individual claims, as provided for by the User Agreement.  *Heckman* is therefore inapposite, and the batch arbitration protocol here does not lose FAA protection.

Even if it were not preempted, *Discover Bank* would not render the User Agreement's class-action waiver unconscionable.  *Discover Bank* is rooted in the principle that class actions are often "the only

1

DEFENDANTS' REPLY ISO MOTION TO COMPEL
                                                                                    ARBITRATION & STAY PROCEEDINGS

effective way" to redress small-dollar claims. 36 Cal.4th at 161 (citation omitted). Its holding is limited to situations where: "[1] small damage disputes could predictably arise between the parties, and when [2] the 'party with the superior bargaining power' is alleged to have 'carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money." *Heckman*, 120 F.4th at 690 (quoting *Discover Bank*, 36 Cal.4th at 162–63). Neither of these circumstances is present here. Plaintiff has not alleged a "scheme" by Coinbase, much less one aimed at nickeling and diming consumers out of small sums of money. Nor has Plaintiff shown that his claims (which seek over $100,000 in damages) would predictability involve "small damage disputes."

*Second*, Plaintiff argues that even if *Heckman* and *Discover Bank* do not control, the batch-arbitration and attorney's fees provisions render the delegation provision substantively unconscionable. This argument also fails. Plaintiff fails to show how these provisions render the *delegation clause* unconscionable, as the Ninth Circuit requires when challenging a delegation clause based upon other provisions in the agreement. *Holley-Gallegly v. TA Operating, LLC*, 74 F.4th 997, 1002 (9th Cir. 2023). In any event, there is nothing unconscionable about the User Agreement's batch arbitration provision, as it preserves Plaintiff's right to bilateral adjudication of his claims and is neither unfair nor one-sided in Coinbase's favor. Further, the attorney's fee provision Plaintiff challenges is of the kind California courts routinely enforce in arbitration agreements. In short, nothing in these provisions disturbs *Bielski*'s finding that the User Agreement's delegation provision is enforceable. Accordingly, Plaintiff's claims must be submitted to arbitration.

## II.    ARGUMENT

### A.    The User Agreement's Class Action Waiver Is Valid and Enforceable

Seeking to avoid his agreement to arbitrate, Plaintiff asserts that under *Heckman*, the User Agreement's batch arbitration provision eliminates FAA preemption and that the *Discover Bank* rule voids the class waiver. Plaintiff is incorrect on both fronts. Neither *Heckman* nor *Discover Bank* applies here.

### 1.    *Heckman* Is Inapposite Because It Addressed a Materially Different Arbitration Clause, and the *Discover Bank* Rule Remains Preempted

Plaintiff's principal contention is that the User Agreement's class waiver is unconscionable under the California Supreme Court's decision in *Discover Bank v. Superior Court*, 36 Cal.4th 148 (2005) (Opp.

2

4).  Binding U.S. Supreme Court precedent holds otherwise.  In *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 352 (2011), the Court held that the FAA preempts any application of *Discover Bank* that poses an "obstacle" to the objectives of the FAA.  Applying *Concepcion*, a court in this district rejected an argument substantially similar to Plaintiff's that the Coinbase User Agreement's arbitration provision is "substantively unconscionable because it prohibits class-wide claims." *Alfia v. Coinbase Global, Inc.*, 2022 WL 3205036, at *4 (N.D. Cal. July 22, 2022).

As the Court explained in *Concepcion*, the FAA's purpose is to "ensur[e] that private arbitration agreements are enforced according to their terms."  563 U.S. at 344 (citation omitted).  To that end, the FAA affords parties "discretion in designing arbitration processes … to allow for efficient, streamlined procedures tailored to the type of dispute." *Id*.  The Court has elsewhere noted that the FAA does not require uniformity in arbitration agreements: nothing in "the FAA prevents the enforcement of agreements to arbitrate under different rules than those set forth in the Act itself."  *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 57 (1995) (citation omitted).  Consistent with that guidance, the AAA's Supplementary Rules for Mass Arbitration note that "[p]arties are encouraged to agree to additional processes that make the resolution of their Mass Arbitration more efficient."  Pl. Ex. B at 3. The User Agreement's batch provision, which is designed to streamline arbitration procedures and create efficiencies in the handling of multiple claims, is therefore an exercise of discretion protected by the FAA.

Plaintiff's argument to the contrary, relying on *Heckman*, is unavailing.  As an initial matter, the batch arbitration provision does not apply to Plaintiff's claims at all, given that Plaintiff, as the sole claimant, is well short of the 100 claims needed to trigger the batch provision.  He will therefore arbitrate his claims individually in exactly the kind of "bilateral arbitration" he concedes the FAA governs.

More fundamentally, *Heckman* is not controlling because the mass arbitration provision in *Heckman* is materially different from the batch arbitration provision here.  The arbitration agreement in *Heckman* provided for a "mass arbitration" protocol administered by "a newly created entity," which employed "novel and unusual procedures."  120 F.4th at 676.  Under that protocol, any time five or more cases shared common issues of law or fact, those issues would be decided in three "bellwether" cases, in which only three claimants participated, confidentially.  *Id.* at 678.  Decisions on common issues in the bellwether cases were fully binding in other cases, even on non-bellwether claimants who had neither

3

DEFENDANTS' REPLY ISO MOTION TO COMPEL ARBITRATION & STAY PROCEEDINGS

knowledge of the proceedings nor the opportunity to participate. *Id.* at 678–79. Thus, batched claims were "not resolved by individual arbitration" and instead were "treated in a 'class or representative' fashion." *Id.* at 683. This protocol brought about "an entirely new form of dispute resolution *intentionally designed* to avoid individual, bilateral adjudication of claims—exactly the attributes of arbitration the Supreme Court in *Concepcion* recognized that the FAA protects."[1] *Id.* at 683 (Vandyke, J., concurring). Thus, *Concepcion* did not apply, and the application of California law to the *Heckman* arbitration agreement was "not preempted by the FAA." *Id.* at 690.[2]

The batch provision in the User Agreement is nothing like the unique mass arbitration protocol in *Heckman*. Instead, it resembles the kind of "bilateral" and "individualized" form of arbitration that is "protected from undue state interference by the FAA." *Id.* at 689–90 (citation omitted). Indeed, the User Agreement's batch provision does not function like a class action at all. Although it consolidates cases with substantially similar facts and the same counsel for the sake of efficiency, in no way does it adjudicate claims on a representative basis or limit each claimant's right to participate fully in the resolution of his case on its own merits and as the claimant directs. Decl. of J. Nacoste, ECF 33-1, Ex. 5, App'x 5, § 1.8.

In this vein, the User Agreement adopts the AAA Mass Arbitration Supplementary Rules, which *Heckman* observed "differ significantly" from the rules applicable in that case. 120 F.4th at 678. By their terms, the AAA Rules "are intended to provide parties and their representatives with an efficient and economical path toward resolution of multiple *individual* disputes." Pl. Ex. B at 3 (emphasis added). The AAA will administer the individual arbitrations in batches of 100, with a single arbitrator presiding over the consolidated individual cases and a single set of filing and administrative fees due per side per batch.

---

[1] The mass arbitration provision in *Heckman* was problematic in numerous other respects not present here. Among other things, the Ninth Circuit noted that the *Heckman* agreement's terms were "affirmatively misleading" and that a user became bound by new terms merely by "browsing [the] website," without any opportunity to decline. 120 F.4th at 682–83. The rules of the chosen arbitral forum, moreover, were "so dense, convoluted and internally contradictory to be borderline unintelligible." *Id.* at 683. In addition, those rules featured "no right to discovery," briefing restrictions that "border[ed] on the absurd," and asymmetrical rights of appeal that rendered the rules "inadequate vehicles for the vindication of plaintiffs' claims." *Id.* at 685. Plaintiff here does not (and could not) contend that User Agreement's batch arbitration provision or the AAA rules share these problematic features.

[2] Coinbase respectfully submits that *Heckman* is wrongly decided, as its reasoning is foreclosed by *Concepcion*, among other United States Supreme Court decisions. Indeed, *Concepcion* expressly noted that parties can agree to class litigation in arbitration, and the FAA requires that such agreements be enforced. *See* 563 U.S. at 351.

4

*Id.* at MA-1(c).  If a claimant disagrees that his claims are "substantially similar" to other claims in the batch, AAA will appoint a separate arbitrator to consider that issue, at Coinbase's sole expense.  Nacoste Decl. Ex. 5 App'x 5, § 1.8.  Unlike *Heckman*, there are no bellwethers, no limitations on individual participation, and no binding of claimants by rulings in other cases.  *See id.  Heckman*'s exception to the general rule that *Discover Bank* is preempted by the FAA, therefore, simply does not apply here.

The Ninth Circuit's recent decision in *Jones v. Starz Entertainment, LLC*, 129 F.4th 1176 (9th Cir. 2025), confirms this conclusion.  There, the court explained the distinction between "representative arbitration," as present in *Heckman*, and mere "consolidation" of individual claims, as contemplated by the User Agreement.  *Id.* at 1182.  The "critical difference" between the two, the court said, is that

> [i]n a class or representative arbitration, an individual brings claims *on behalf of* others, whereas a claimant in a consolidated arbitration brings the claims in her *individual* capacity.  It is that representative feature, not the mere numerosity of parties, that forms the critical element of the fundamental changes brought about by the shift from bilateral arbitration to class-action arbitration.

*Id.* (emphasis in original) (citation omitted).  The court drew a direct contrast between the "novel arbitration procedures" at issue in *Heckman* and the mass arbitration procedures in the governing Judicial Arbitration and Mediation Services (JAMS) rules, which—like the AAA rules adopted by the User Agreement—permitted consolidation of individual arbitration demands sharing common issues of law or fact. 129 F.4th at 1182–83.  In particular, the *Heckman* protocol's use of bellwether cases and the resulting deprivation of due process for claimants in other cases were "red flags associated with classwide arbitration" that the court observed were absent from the JAMS rules.  *Id.*

Plaintiff tellingly omits any discussion of *Jones*, and instead seeks to blur the distinction between the Coinbase batch arbitration provision and the *Heckman* provision by mischaracterizing both the User Agreement's terms and the AAA Mass Arbitration Supplementary Rules.  Pointing to multiple rules in the MA-6 series, Plaintiff erroneously asserts that they "establish a system of precedent, where earlier rulings are binding on absent parties." (Opp. 2; *see also* Opp. 5.)  Plaintiff further contends that "[f]uture claimants are funneled into consolidated proceedings and subject to the outcome of earlier arbitrations about which they had no notice, no opportunity to participate, and no meaningful ability to contest the results." (Opp. 2–3; *see also* Opp. 5.)  These rules do nothing of the sort.  Instead, MA-6(c) simply grants

5

DEFENDANTS' REPLY ISO MOTION TO COMPEL
ARBITRATION & STAY PROCEEDINGS

1  a "Process Arbitrator" the authority to make purely administrative determinations to streamline individual

2  but similar claims brought by the same or coordinated counsel.  Pl. Ex. B at MA-6(c)(ix); *see also* MA

3  (Introduction).  Critically, "[t]he Process Arbitrator *must allow* the parties in these subsequently filed cases

4  the opportunity to address the applicability of any rulings to these cases before making any final

5  determination."  *Id.* at MA-6(c)(ix) (emphasis added).  Thus, while Plaintiff makes much of the provision

6  granting the process arbitrator the authority to rule on "[w]hether any previously issued rulings … are

7  binding on the subsequent cases," *id.* at MA-6(c)(x) (Opp. 5, 12), that provision simply provides a

8  procedure for the arbitrator to address any arguments raised by the parties as to this issue.  It does not bind

9  future claimants, and instead provides claimants the opportunity to meaningfully contest the results of any

10 of the process arbitrator's rulings.  This is the exact opposite of the process at issue in *Heckman*.

### 2.  Even if the *Discover Bank* Rule Were Not Preempted, The User Agreement's Class Waiver Provision Would Not Be Unconscionable

13 The rule in *Discover Bank* would not apply here even if it were not preempted.  The court in

14 *Discover Bank* noted that "at least *some* class action waivers in consumer contracts are unconscionable

15 under California law," but made clear that it did "*not* hold that *all* class action waivers are necessarily

16 unconscionable."  36 Cal.4th at 160, 162 (emphasis added).  Undergirding the court's holding was the

17 idea that class actions are "often the only effective way" to redress small dollar claims. *Id.* at 161.  Properly

18 understood, therefore, the ruling in *Discover Bank* that some class waivers may be unenforceable is limited

19 to specific cases "when [1] small damage disputes could predictably arise between the parties, and when

20 [2] the 'party with the superior bargaining power' is alleged to have 'carried out a scheme to deliberately

21 cheat large numbers of customers out of individually small sums of money.'"  *Heckman*, 120 F.4th at 690

22 (quoting *Discover Bank*, 36 Cal.4th at 162–63).  Neither of these circumstances is present here.

23 *First*, Plaintiff has not alleged a "scheme" by Coinbase, much less one aimed at nickeling and

24 diming consumers out of small sums of money.  The prototypical example of such a scheme is one where

25 "[a] company … wrongfully exacts a dollar from each of millions of customers."  *Discover Bank*, 36

26 Cal.4th at 161 (citation omitted).  Coinbase is not alleged to have stolen from Plaintiff at all and the amount

27 at issue is not small dollar.  Rather, Plaintiff alleges Coinbase failed to prevent a scam by a third party

28 that, in his case, allegedly resulted in losses of over $100,000.  (Opp. 1.)  As explained in *Discover Bank*,

6

a plaintiff who alleges damages that are quite small (in that case, $29) is able to effectively remedy the harm only through a class action. 36 Cal.4th at 159. That reasoning plainly does not apply in a situation like this one, where the plaintiff alleges losses in the six figures. *See Jeong v. Nexo Capital Inc.*, 2023 WL 2717255, at *5 (N.D. Cal. Mar. 29, 2023) ("requested damages exceed[ing] $100,000 … is not a small amount of damages under the *Discover Bank* test"); *Arguelles-Romero v. Superior Ct.*, 184 Cal. App.4th 825, 844 (2010) (rejecting unconscionability challenge under *Discover Bank* because plaintiff, who sought $16,000 in damages, had "failed to establish that the individual amounts at issue are so small that a class action is the only viable remedy").[3] Plaintiff has not pointed to a single case in which a court viewed a six-figure damages claim as sufficiently "small" to invoke the unconscionability rule in *Discover Bank*.[4]

*Second,* Plaintiff has also not shown that the claims he advances are ones that would predictability involve "small damage disputes." As Plaintiff's own experience demonstrates, victims of third-party pig-butchering schemes can lose significant sums of money. Accordingly, even if smaller losses do occur in the pig-butchering context, they are not "predictabl[e]" as they are in the prototypical one-dollar-a-million-times consumer case discussed in *Discover Bank*. 36 Cal.4th at 161–62. Plaintiff's assertion to the contrary—based wholly on his contention that Coinbase "exposed users to scams involving average losses between $800 and $8,000" (Opp. 7)—is both unsupported and speculative. The purported source for this information cited in the Complaint (at ¶ 15) says nothing about the average loss for fraud victims, and instead discusses only the total losses for different types of fraud. Even assuming Plaintiff's figures are correct, they represent average losses across all consumers in broad categories of "investment" and "imposter" fraud. Compl. ¶ 15. They are not specific to cryptocurrency fraud, Coinbase, or the claims

---

[3] Plaintiff argues that *Massie v. Ralphs Grocery Co.* 2012 WL 1078562, at *6 (Cal. Ct. App. Apr. 2, 2012) was a case where the court viewed damages ranging from $10,000 and $80,000 as sufficiently small for purposes of the unconscionability analysis under *Discover Bank*. (Opp. 8.) But *Massie* did not apply *Discover Bank* and instead applied *Gentry v. Superior Court*, 42 Cal.4th 443 (2007), which applies to claims under California employment statutes. Notably, although one plaintiff in *Massie* had a claim in excess of $80,000, the court assumed most plaintiffs in the case would be seeking far less: "Adjusting for risk, no individual would file a claim necessitating the complex discovery undertaken in an overtime case such as these in the hope of obtaining $30,000." 2012 WL 1078562, at *6.

[4] *Independent Association of Mailbox Center Owners, Inc. v. Superior Court*, 133 Cal. App.4th 396 (2005) (Opp. 8), does not help Plaintiff. The court there merely concluded that the plaintiffs' claims had "common issues of law and fact" amenable to class arbitration and did not address whether the amount of damages was low enough to qualify under the *Discover Bank* rule. *Id.* at 408–11.

DEFENDANTS' REPLY ISO MOTION TO COMPEL ARBITRATION & STAY PROCEEDINGS

asserted in this case. This apples-to-oranges comparison reveals nothing about the expected losses of any given Coinbase user for the type of scam at issue here.

Finally, if Plaintiff's inability to satisfy either of the *Discover Bank* conditions were not enough, that case is inapplicable here for an additional reason: While the arbitration agreement in *Discover Bank* prohibited "consolidating claims" as well as class and representative actions, 36 Cal.4th at 153, the User Agreement includes a batch provision ensuring that even small dollar claims can be litigated efficiently and inexpensively in consolidated proceedings. Not only does Coinbase pay all arbitration fees after the initial filing fee, but in batch arbitration, Coinbase and 100 claimants agree (i) to "single filing and administrative fees for batches of Requests," and (ii) to work together on "steps to minimize the time and costs of arbitration." Nacoste Decl. Ex. 5, App'x 5, § 1.8. Thus, unlike in *Discover Bank*, the User Agreement's class action waiver does not, in any sense, operate as an exculpatory clause.

## B.    Plaintiff's Other Unconscionability Arguments Also Fail

Plaintiff alternatively contends that even if the class waiver is not unconscionable under *Heckman* and *Discover Bank*, the batch provision (and other changes made to the 2022 User Agreement) render the delegation clause unconscionable and distinguish this case from *Bielski*.[5] (Opp. 9.) Plaintiff's attempt to avoid *Bielski* on the ground that it involved an earlier version of the User Agreement should be rejected, as none of the differences between the two agreements is material to the unconscionability inquiry.

### 1.    There is No Procedural Unconscionability

Plaintiff asserts three grounds for finding procedural unconscionability. None has merit.

*First*, Plaintiff asserts that the User Agreement's delegation provision is a contract of adhesion. (Opp. 10.) But that does not render the arbitration agreement unenforceable. The Ninth Circuit in *Bielski* and this Court in *Kamath v. Coinbase, Inc.* each held the delegation provision enforceable *despite* concluding that it was a contract of adhesion. *See Bielski*, 87 F.4th at 1014; *Kamath*, 2024 WL 950163, at *8 (N.D. Cal. Mar. 5, 2024) (Breyer, J.).

---

[5] To the extent Plaintiff purports to challenge the unconscionability of these provisions as part of a broader attack on the enforceability of the arbitration agreement, *see* Opp. 9, such a challenge is reserved for the arbitrator under the User Agreement's delegation clause.

CASE NO. 3:25-cv-03089-CRB                                  DEFENDANTS' REPLY ISO MOTION TO COMPEL
                                                            ARBITRATION & STAY PROCEEDINGS

*Second*, Plaintiff contends that the User Agreement's delegation provision presents surprise because it is "buried" in a "prolix" and "densely worded" form, and unlike in the version at issue in *Bielski*, is set out in an appendix towards the end of the Agreement. (Opp. 10.) This argument ignores the clear and plain language *written in bold text on the very first page* of the User Agreement notifying customers that Appendix 5 "includes an agreement to arbitrate which requires … that *all disputes* between you and us shall be resolved by binding and final arbitration." User Agreement p. 1. As in *Bielski*, therefore, "there is no argument that the [dispute resolution] process is hidden in the User Agreement" because it is "clearly presented," "written in plain language," and written "in a legible-sized font." 87 F.4th at 1014.

*Third*, Plaintiff complains that the delegation provision "itself is anything but clear" (Opp. 10–11), noting the delegation provision in the 2022 User Agreement carves out parts of the arbitrator's jurisdiction, which Plaintiff characterizes as "a single 14-line sentence riddled with exceptions [and] cross-references to other contract sections." (Opp. 10.) But the Ninth Circuit in *Bielski* considered the same core language and declined to find procedural unconscionability. 87 F.4th at 1012–14. Indeed, no fewer than four courts have upheld the enforceability of the same delegation provision in the 2022 User Agreement. *See Kamath*, 2024 WL 950163, at *8–9; *Aggarwal v. Coinbase, Inc.*, 685 F. Supp. 3d 867, 882 (N.D. Cal. 2023); *Pearl v. Coinbase Global, Inc.*, 2023 WL 1769190, at *6–7 (N.D. Cal. Feb. 3, 2023); *Donovan v. Coinbase Global, Inc.*, 2023 WL 2124776, *3-5 (N.D. Cal. Jan. 6, 2023). *Aggarwal*, in particular, dismissed a similar criticism that the delegation provision is "unfairly surprising" because users had to "cross-reference other sections earlier in the User Agreement to ascertain its meaning." 685 F. Supp. 3d at 881.

### 2.    There is No Substantive Unconscionability

Plaintiff's substantive unconscionability arguments are likewise unavailing. As an initial matter, none of these arguments focus on the text of the delegation provision and instead target other provisions in the arbitration agreement. To prevail on such a substantive unconscionability argument, Plaintiff must "explain how" the provisions complained of, "which [are] outside the Delegation Clause, 'make[] the fact of an arbitrator deciding arbitrability unconscionable.'" *Kohler v. Whaleco, Inc.*, 757 F. Supp. 3d 1112, 1129 (S.D. Cal. 2024) (quoting *Holley-Gallegly*, 74 F.4th at 1002). Plaintiff has not done so. Remarkably, Plaintiff fails to make *any* effort to connect two out of his three substantive unconscionability arguments to the delegation clause.

On the merits, Plaintiff acknowledges, as he must, that *Bielski* already rejected a substantive unconscionability challenge to Coinbase's delegation clause. (Opp. 11.)  Plaintiff nonetheless asserts that he raises "several grounds not considered in *Bielski*" based on the 2022 version of the User Agreement in place here. (Opp. 11.)  Yet the only substantive difference between the version of the User Agreement here and in *Bielski* to which Plaintiff points is the addition of the batch arbitration provision discussed above.  All the courts that have considered a substantive unconscionability challenge to the delegation clause in the 2022 User Agreement have upheld it.  *See Kamath*, 2024 WL 950163, at *6; *Aggarwal*, 685 F. Supp. 3d at 880–82; *Pearl*, 2023 WL 1769190, at *6–7; *Donovan*, 2023 WL 2124776, at *3-5.  Indeed, this Court expressly held in *Kamath* that the delegation provision in the 2022 User Agreement "is not substantively unconscionable" and therefore "is valid and enforceable."  2024 WL 950163, at *6.  The same result is required here, for at least three reasons.

*First*, Plaintiff likens the batch arbitration provision to the one in *Heckman*, and asserts that it renders the delegation provision unconscionable because it results in a deprivation of due process. (Opp. 11–13.)  But as discussed above, the *Heckman* mass arbitration regime is far afield from the one contemplated by the User Agreement.  The rules of the arbitral forum incorporated into the *Heckman* arbitration agreement provided that early merits decisions in mass arbitrations would constitute binding precedent in later arbitrations involving other claimants.  120 F.4th at 684.  The Ninth Circuit held that these rules violated "basic principles of due process" because later claimants had no opportunity to participate in those earlier proceedings and would "not even know the decision[s]" in those proceedings. *Id.*  The batch provision here, in contrast, involves no bellwethers, no limitations on each individual claimant's ability to participate in the consolidated process, and no binding of claimants by rulings on proceedings in which they did not participate.  *See supra* at 5.

The Ninth Circuit in *Jones* drew a similar contrast between the mass arbitration protocol in *Heckman* and an arbitral provision like Coinbase's that permitted consolidated treatment of arbitrations.  129 F.4th at 1182.  The court observed that the *Heckman* protocol was substantively unconscionable based on its "use of bellwether cases," the result of which was that "[c]laimants in non-bellwether cases had no right to participate in bellwether cases, no access to the bellwether decision until it was invoked against them, no notice of the bellwether cases, no opportunity to be heard, and no right to opt out of the batch."

10

*Id.* The consolidation permitted by the *Jones* agreement "implicate[d] none of those concerns," and "no claimant [was] at the mercy of another claimant's representation of her." *Id.* Other courts have distinguished *Heckman* on a similar ground in rejecting unconscionability challenges to batch provisions. *See Kohler*, 757 F. Supp. 3d at 1128 (distinguishing *Heckman* based on absence of bellwethers in batch protocol); *Pilon v. Discovery Commc'ns, LLC*, 769 F. Supp. 3d 273, 298 (S.D.N.Y. 2025) (same).

Plaintiff raises additional due process arguments based on his misreading of the AAA Mass Arbitration Supplementary Rules. Plaintiff argues that those rules permit the process arbitrator to rule that a decision as to the enforceability of a delegation clause may apply to "future claimants." (Opp. 12.) That is incorrect for the reasons set forth above: future claimants are not bound by prior decisions of a process arbitrator. *See supra* at 5. The court in *Pandolfi v. AviaGames Inc.* agreed, noting that "nothing in the AAA Supplementary Rules suggests that the Process Arbitrator has a role in deciding matters beyond those that are administrative or ministerial in nature, and the issues of arbitrability are clearly more consequential in nature." 2024 WL 4051754, at *8 (N.D. Cal. Sept. 4, 2024). Plaintiff fails to provide authority supporting the unconscionability of the AAA mass arbitration rules. To the contrary, courts have observed that those rules ensure fairness and due process. *See MacClelland v. Cellco P'ship*, 609 F. Supp. 3d 1024, 1043–44 (N.D. Cal. 2022) (noting that 2021 version of AAA mass arbitration rules stood "in stark contrast" to defendant's unconscionable protocol that featured bellwether proceedings).

*Second*, Plaintiff contends the arbitration agreement is "illusory" because it gives Coinbase "unilateral power to nullify it," and points to Rule MA-10(d)-(e) in the AAA Mass Arbitration Supplementary Rules that he says allow Coinbase to "terminate the proceeding altogether" by withholding payment of the arbitration fee. (Opp. 13.) Plaintiff appears concerned about a situation where an individual initiates arbitration but Coinbase refuses to pay the arbitration fee. Plaintiff claims Coinbase took such action in connection with *Bernstein v. Coinbase Global Inc.*, No. 1:25-cv-5313, ECF 1 ¶¶ 51–61 (N.D. Ill. May 13, 2025) (Opp. 14.) Plaintiff's argument is meritless for multiple reasons.

Plaintiff's argument is not well-taken given that he *opposes* arbitration of this dispute. As Plaintiff concedes (Opp. 13), were Coinbase to resist arbitration for any reason, Plaintiff would be free to pursue his claims in court—just as Plaintiff is seeking to do here. Indeed, in *Bernstein v. Coinbase Global, Inc.*, 1:25-cv-5313 (N.D. Ill.), a case Plaintiff points to as evidence of Coinbase's "unilateral power" to

terminate arbitration (Opp. 14), the plaintiff initiated a class action in federal court after arbitration proceedings stalled. *Bernstein*, 1:25-cv-5313, ECF 1 ¶¶ 62–66.

In any event, Plaintiff is incorrect that the challenged provisions in the AAA Mass Arbitration Supplementary Rules render the User Agreement's arbitration provision unenforceable. The rule in question—MA10(d)-(e)—is a basic, noncontroversial rule that applies to both parties equally and merely notes that if a party fails to pay the arbitration fee, the arbitration cannot go forward. This is in no way unique to the mass arbitration context. *See* AAA Consumer Arbitration R. 56(d) (granting arbitrator authority to terminate proceedings for nonpayment of fees). Unsurprisingly, then Plaintiff fails to cite any authority finding this rule to be unconscionable.[6]

To the contrary, as the Seventh Circuit recently explained, parties may "bargain[] for the AAA's discretion over the payment of administrative filing fees, including the consequences that would stem from a party's refusal to pay those fees." *Wallrich v. Samsung Elecs. Am., Inc.*, 106 F.4th 609, 620 (7th Cir. 2024). There, the business—Samsung—declined to pay AAA filing fees. But the AAA rules provided the ground rules for that precise scenario:

> After Samsung refused to pay its fees, the AAA, in line with its rules (which it applies in its discretion), allowed the consumers to advance Samsung's fees. If the consumers had advanced the fees, Samsung would have arbitrated the merits of the consumers' claims. However, the consumers declined. The AAA then could have stayed the arbitration, as requested by the consumers, but it chose not to. Instead, it terminated the proceedings, opening the door for the consumers to pursue their claims in district court.

*Id.* at 620. The court enforced those rules and declined the claimants' attempt to force Samsung to pay arbitration fees. The Ninth Circuit came to the same conclusion in *Lifescan, Inc. v. Premier Diabetic Services, Inc.*, 363 F.3d 1010 (9th Cir. 2004). There, the court reversed the grant of a petition to compel where the business declined to pay its share of the AAA filings fees and the AAA suspended the arbitrations. The court explained that arbitrators may "exercise[] their discretion … by allowing the arbitration to proceed on the condition that [the claimant] advance the remaining fees." *Id.* at 1012–13.

---

[6] The arbitration agreements in the cases Plaintiff cites (at Opp. 13)—*Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1179 (9th Cir. 2003), *Brashear v. Halliburton Energy Services, Inc.*, 2020 WL 4596116, at *14 (E.D. Cal. Aug. 11, 2020)—*do not* address the type of provision challenged here. Instead, those cases involved a provision that allowed the defendant to unilaterally amend or terminate the arbitration agreement—a provision materially distinct from the one challenged here.

Just as in *Wallrich* and *Lifescan*, the claimants in *Bernstein* could have continued the arbitration by "pay[ing] the fees that Coinbase owed," and thus Coinbase did not have the ultimate say as to whether the arbitration continued. *Bernstein*, 1:25-cv-5313, ECF 1 ¶ 58. The terms of the agreement are therefore not "unfairly one-sided," as required for substantive unconscionability. *Bielski*, 87 F.4th at 1014.

*Third*, Plaintiff complains that the arbitration agreement has a one-sided attorney's fee provision—a provision that existed in the version of the User Agreement deemed enforceable in *Bielski*. (Opp. 14.) But that provision is expressly bilateral, and thus is not unfair to Plaintiff. The case Plaintiff cites in support—*Ramirez v. Charter Communications, Inc.*—found a *nonmutual* attorney's fee provision unconscionable under a specific employment statute's "asymmetric rule" that existed to "promote vigorous enforcement of … civil rights laws." 16 Cal.5th 478, 508 (2024) (citation omitted). No such thumb on the scale in favor of plaintiffs exists in the ordinary case. California law is clear that "the standard for substantive unconscionability—the requisite degree of unfairness beyond merely a bad bargain—must be as rigorous and demanding for arbitration clauses as for any contract clause." *Sanchez v. Valencia Holding Co.*, 61 Cal.4th 899, 912 (2015). Consistent with that principle, California courts routinely enforce attorney fee provisions in arbitration agreements. *E.g.*, *Acosta v. Kerrigan*, 150 Cal. App.4th 1124, 1132 (2007); *DiMarco v. Chaney*, 31 Cal. App.4th 1809, 1815 (1995). The fee provision here is no different, and does not render the delegation clause unconscionable.[7]

### III.    CONCLUSION

For the reasons stated above, Coinbase respectfully requests that this Court grant its motion to: (1) compel Plaintiff to arbitrate his claims against it; and (2) stay all proceedings.

---

[7] Contrary to Plaintiff's contention (Opp. 15), the arbitration agreement is properly severable were the Court find any provision therein to be unconscionable (which it should not). *See* Nacoste Decl. Ex. 5, App'x 5, § 9.3 (requiring severance "[i]f any provision of this Agreement shall be determined to be invalid or unenforceable"). California courts favor severing unconscionable provisions of an arbitration agreement when "the central purpose of the contract" is not "tainted with illegality." *Little v. Auto Stiegler, Inc.*, 29 Cal.4th 1064, 1074 (2003) (severing under these circumstances). Here, as in *Little*, the assertedly unconscionable provisions, including the class waiver and batch arbitration provisions, are "collateral" to the contract's main purpose, as they do not prevent Plaintiff from fairly arbitrating his claims with Coinbase. *Id.* The fundamental differences between the batch provision here versus in *Heckman* undermine Plaintiff's argument that the agreement is "permeated with unconscionability and cannot be salvaged through severance." (Opp. 15.)

DEFENDANTS' REPLY ISO MOTION TO COMPEL ARBITRATION & STAY PROCEEDINGS

Dated: July 21, 2025

CONRAD | METLITZKY | KANE LLP

*/s/ Gabriela Kipnis*
Gabriela Kipnis

CONRAD | METLITZKY | KANE LLP
217 Leidesdorff Street
San Francisco, CA 94111
415.343.7100
415.343.7101

Joseph M. Terry (*pro hac vice*)
John McNichols (*pro hac vice*)
Jesse T. Smallwood (*pro hac vice*)

WILLIAMS & CONNOLLY LLP
680 Maine Avenue, SW
Washington, DC  20024
(202) 434-5000 / office
(202) 434-5029 / fax

*Counsel for Defendants Coinbase Global, Inc.,
Coinbase, Inc., and Coinbase Bermuda Services,
Ltd.*

DEFENDANTS' REPLY ISO MOTION TO COMPEL
ARBITRATION & STAY PROCEEDINGS