# EXHIBIT 1

**KESSLER TOPAZ
MELTZER & CHECK, LLP**
Jennifer L. Joost (Bar No. 296164)
One Sansome Street, Suite 1850
San Francisco, CA 94104
Telephone: (415) 400-3000
Facsimile: (415) 400-3001
jjoost@ktmc.com

-and-

**KESSLER TOPAZ
MELTZER & CHECK, LLP**
Joseph H. Meltzer (*pro hac vice forthcoming*)
Melissa L. Yeates (*pro hac vice*)
Jordan E. Jacobson (Bar No. 302543)
Matthew Macken (*pro hac vice forthcoming*)
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
jmeltzer@ktmc.com
myeates@ktmc.com
jjacobson@ktmc.com
mmacken@ktmc.com

**JOSEPH HAGE AARONSON LLC**
Gregory P. Joseph (*pro hac vice*)
Mara Leventhal (*pro hac vice*)
Christopher Stanley (*pro hac vice*)
Benjamin A. Taylor (*pro hac vice*)
800 Third Avenue, 30th Floor
New York, NY 10022
Tel: (212) 407-1210
Fax: (212) 407-1280
gjoseph@jhany.com
mleventhal@jhany.com
cstanley@jhany.com
btaylor@jhany.com

*Counsel for Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RYAN CORDERO, PATRICK B. GOODWIN, HENRY HOBSON III, and CHRISTOPHER JOHNSON, individually and on behalf of all others similarly situated, | ) Case No. 3:25-cv-04024-CRB )<br>)<br>) **PLANTIFFS' OPPOSITION TO DEFENDANT**<br>) **COINBASE, INC.'S MOTION TO COMPEL**<br>) **ARBITRATION AND STAY PROCEEDINGS** |
| Plaintiffs, | ) <br>) Hearing:  June 13, 2024<br>) Time:  10 a.m. |
| v. | ) Courtroom:  6<br>) The Honorable Charles R. Breyer |
| COINBASE, INC., | )<br>) |
| Defendant. | )<br>)<br>)<br>) |

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................... ii

SUMMARY OF ARGUMENT ................................................................................................1

QUESTIONS PRESENTED.....................................................................................................3

BACKGROUND .......................................................................................................................3

I.     PLAINTIFFS' CLAIMS .......................................................................................3

II.    COINBASE'S ONE-SIDED ARBITRATION CLAUSE IS NOT BILATERAL
AND STRIPS CONSUMERS OF SUBSTANTIVE CLAIMS AND REMEDIES ...........5

     A.    The Arbitration Clause Is One-Sided In Coinbase's Favor .........................................5

     B.    The Arbitration Clause Requires Mass—Not Bilateral—Arbitration .......................7

     C.    Challenges To The Validity Of The Class Action Waiver Must Be Made In
Court .........................................................................................................................8

ARGUMENT .............................................................................................................................8

I.     THE ARBITRATION CLAUSE REQUIRES A COURT TO DECIDE PLAINTIFFS'
CHALLENGE TO THE CLASS ACTION WAIVER ........................................................8

II.    THE CLASS ACTION WAIVER VIOLATES THE *DISCOVER BANK* RULE .............9

     A.    The *Discover Bank* Rule Is Not Preempted Under *Heckman* ................................9

     B.    The *Discover Bank* Rule Is Alternatively Not Preempted Because Plaintiffs
Cannot Effectively Vindicate Their Statutory Claims In Arbitration.......................11

     C.    The Class Action Waiver Violates The *Discover Bank* Rule ................................12

III.   THE CLASS ACTION WAIVER PROVISION IS UNCONSCIONABLE....................14

     A.    Procedural Unconscionability...................................................................................14

     B.    Substantive Unconscionability..................................................................................15

IV.   BECAUSE THE CLASS ACTION WAIVER IS INVALID AND
UNENFORCEABLE, PLAINTIFFS CAN BRING THEIR CLAIMS IN COURT ........17

CONCLUSION........................................................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aggarwal v. Coinbase, Inc.*,
    685 F. Supp. 3d 867 (N.D. Cal. 2023) ..................................................................17

*Am. Express Co. v. Italian Colors Rest.*,
    570 U.S. 228 (2013)..........................................................................................11

*AT&T Mobility LLC v. Concepcion*,
    563 U.S. 333 (2011)........................................................................................1, 9

*Bridge Fund Cap. Corp. v. Fastbucks Franchise Corp.*,
    622 F.3d 996 (9th Cir. 2010) ............................................................................16

*Carnegie v. Household Int'l, Inc.*,
    376 F.3d 656 (7th Cir. 2004) ............................................................................12

*Discover Bank v. Superior Ct.*,
    36 Cal.4th 148 (2005) ............................................................................. *passim*

*Donovan v. Coinbase Glob., Inc.*,
    649 F. Supp. 3d 946 (N.D. Cal. 2023) ..................................................................17

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974)..........................................................................................12

*Flores v. Transamerica HomeFirst, Inc.*,
    93 Cal. App. 4th 846 (2001) ............................................................................14

*Gatton v. T-Mobile USA, Inc.*,
    152 Cal. App. 4th 571 (2007) ............................................................................13

*Green Tree Fin. Corp. Ala. v. Randolph*,
    531 U.S. 79 (2000)...............................................................................2, 3, 9, 11

*Gutierrez v. Autowest, Inc.*,
    114 Cal. App. 4th 77 (2003) ............................................................................16

*Harper v. Ultimo*,
    113 Cal. App. 4th 1402 (2003) ..........................................................................17

*Heckman v. Live Nation Ent., Inc.*,
    120 F.4th 670 (9th Cir. 2024) ................................................................. *passim*

ii

*Jones v. Starz Ent., LLC*,
    129 F.4th 1176 (9th Cir. 2025) ........................................................................10 n.6

*Kattula v. Coinbase Glob., Inc.*,
    2023 WL 4373385 (N.D. Ga. July 6, 2023)....................................................17

*Kramer v. Coinbase, Inc.*,
    105 Cal. App. 5th 741 (2024) ...............................................................6 n.4, 16

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
    473 U.S. 614 (1985) ............................................................................................11

*Nelson v. Dual Diagnosis Treatment Ctr., Inc.*,
    77 Cal. App. 5th 643 (2022) .............................................................................16

*OTO, L.L.C. v. Kho*,
    8 Cal. 5th 111 (2019) .........................................................................................14

*Parada v. Superior Ct.*,
    176 Cal. App. 4th 1554 (2009) .................................................................. 15-16

*Pearl v. Coinbase Glob., Inc.*,
    2023 WL 1769190 (N.D. Cal. Feb. 3, 2023) ...............................................17

*Peleg v. Neiman Marcus Grp., Inc.*,
    204 Cal. App. 4th 1425 (2012) .......................................................................15

*Pover v. Cap. Grp. Cos. Inc.*,
    2024 WL 4116000 (C.D. Cal. Aug. 9, 2024),
    *adopted*, 2024 WL 4116001 (C.D. Cal. Aug. 12, 2024)..............................11

*Storms v. Paychex, Inc.*,
    2022 WL 2160414 (C.D. Cal. Jan. 14, 2022) ..............................................16

*Viking River Cruises, Inc. v. Moriana*,
    596 U.S. 639 (2022)............................................................................ 1, 11 & n.8

## Rules & Statues

9 U.S.C. § 1 et seq. ...................................................................................... *passim*

FED. R. CIV. P. 56(d) ................................................................................12 n.10

### SUMMARY OF ARGUMENT[1]

Coinbase's motion to compel arbitration must be rejected under controlling federal and California law. The Supreme Court's "FAA [Federal Arbitration Act] precedents treat *bilateral* arbitration as the prototype of the *individualized* and informal form of arbitration protected from undue state interference by the FAA." *Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 656-57 (2022); *see AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 351 (2011) (noting "aggregation" of arbitration claims "is not arbitration as envisioned by the FAA."). Applying these precedents, the Ninth Circuit recently found that dispute resolution under a mass arbitration clause, which aggregated and resolved "batched claims," is not the type of arbitration agreement that Congress sought to protect when it enacted the FAA. *Heckman v. Live Nation Ent., Inc.*, 120 F.4th 670, 690 (9th Cir. 2024). The Ninth Circuit thus held that the FAA does not preempt the application of California's "*Discover Bank* rule"— which says that class waivers in consumer contracts of adhesion are unenforceable—to an arbitration agreement with a mass arbitration clause. *Id*. at 690 ("the FAA does not preempt California's *Discover Bank* rule as it applies to mass arbitration").

Coinbase's Motion fails because it relies on a User Agreement with the same type of non-bilateral mass arbitration provision (Nacoste Ex. 6, AC § 1.8) that was at issue in *Heckman*. Under *Heckman*'s controlling authority, the FAA therefore does not preempt the *Discover Bank* rule here. That is fatal to Coinbase's Motion. Under the *Discover Bank* rule, the User Agreement's Class Action Waiver (defined below to mean AC § 1.3) is unenforceable because the User Agreement is a contract of adhesion, and Plaintiffs allege that Coinbase carried out a deliberate scheme to cheat Plaintiffs and similarly situated class members out of individually small sums of money. *See Discover Bank v. Superior Court*, 36 Cal.4th 148, 162-63 (2005).

There is a second, independent reason that the FAA does not preempt application of the *Discover Bank* rule here. *Heckman* made clear that the FAA does not preempt application of the *Discover Bank*

---

[1] **"Complaint"** or **"Compl."** refers to Plaintiffs' Complaint in this action (ECF 1). **"Answer"** refers to Coinbase's Answer (ECF 15). **"Motion"** or **"Mot."** refers to Coinbase's Motion to Compel Arbitration and to Stay Proceedings (ECF 14). **"Nacoste Decl."** and **"Nacoste Ex."** refer to the Declaration of Jerry Nacoste supporting Coinbase's Motion (ECF 14-1) and its exhibits. **"User Agreement"** refers to the January 2022 user agreement (the **"User Agreement"**) (Nacoste Ex. 6), and the **"Arbitration Clause"** or **"AC"** are Appendix 5 of that agreement. Emphasis is added to, and citations and internal quotation and punctuation marks are omitted from, quoted matter in this Opposition, unless otherwise noted.

1    rule so long as the application of the rule does not "pose[] an 'obstacle' to objectives of the FAA."

2    *Heckman*, 120 F.4th at 689-90. There is no such obstacle here because the Supreme Court has stated that

3    the FAA does not require courts to enforce arbitration agreements where plaintiffs cannot "effectively

4    … vindicate [their] statutory cause[s] of action in the arbitral forum." *Green Tree Fin. Corp. Ala. v.*

5    *Randolph*, 531 U.S. 79, 90 (2000) ("*Green Tree*"). That effective vindication rule applies here. Under

6    the User Agreement, just commencing an arbitration under the governing AAA rules costs more than

7    Plaintiffs' individual claims are worth. *See* Compl. ¶¶97-99. The result is that the Class Action Waiver

8    effectively precludes Plaintiffs from pursuing their statutory causes of action.

9        Finally, Coinbase's Motion also fails under *Heckman*'s alternate holding that the class action

10   waiver could not be enforced because "the arbitration agreement as a whole is unconscionable."

11   *Heckman*, 120 F.4th at 690. *Heckman*'s unconscionability finding was based in large part on a provision

12   in the agreement that allowed the defendant to unilaterally modify the terms of the agreement

13   "retroactively" and "without prior notice." *Id.* at 682-83 (provision gave to "an extreme amount of

14   procedural unconscionability far above and beyond a run-of-the-mill contract-of-adhesion case").

15   Coinbase's Arbitration Clause similarly permits Coinbase to modify the agreement retroactively.

16   Nacoste Ex. 6, AC § 1.9. That provision is particularly troubling because the User Agreement falsely

17   assures consumers that changes "will *not* apply retroactively" (*id.* at 1) and holds consumers' accounts

18   and assets hostage unless and until they accept Coinbase's modifications (*id.*, AC § 1.9). Coinbase's

19   Class Action Waiver is also substantively unconscionable because it implicitly and explicitly strips

20   consumers of their ability to seek certain statutory claims and remedies. These egregious terms are

21   another alternate reason for the Court to find that the Class Action Waiver cannot be enforced.

22       While Coinbase contends that these issues have been delegated to an arbitrator (Mot. at 9), that is

23   not what the Arbitration Clause says.  Section 1.6 of the Arbitration Clause states that "all Disputes

24   arising out of or relating to the Section entitled 'Waiver of Class and Other Non-Individualized Relief,'

25   including any claim that all or part of the Section … is unenforceable, illegal, void or voidable … *shall*

26   *be decided by a court of competent jurisdiction* and not by an arbitrator." Nacoste Ex. 6, AC §1.6.

27   Accordingly, Plaintiffs' Opposition arguments—all of which focus on the unenforceability of the

28   Arbitration Clause's Class Action Waiver—are properly before this Court.

Because the Class Action Waiver here is invalid and unenforceable, the savings clause in the Class Action Waiver (Nacoste Ex. 6, AC § 1.3) permits Plaintiffs to litigate their claims in "the state or federal courts located in the State of California." Coinbase's Motion should be denied.

## QUESTIONS PRESENTED

1. The User Agreement provides that challenges to the Class Action Waiver "shall be decided by a court of competent jurisdiction and not by an arbitrator." Nacoste Ex. 6, AC §1.6. Should the Court or an arbitrator rule on Plaintiffs' challenges to the Class Action Waiver?

2. The Ninth Circuit held in *Heckman* that "the FAA does not preempt California's *Discover Bank* rule as it applies to mass arbitration." 120 F.4th at 690. Does the FAA preempt application of California's *Discover Bank* rule here, where Coinbase's User Agreement requires mass arbitration?

3. The Supreme Court explained in *Green Tree* that the FAA does not require arbitration where a consumer cannot "effectively … vindicate [their] statutory cause[s] of action in the arbitral forum." 531 U.S. at 90. Does the FAA preempt application of California's *Discover Bank* rule here, where the Class Action Waiver effectively precludes Plaintiffs from pursuing their statutory claims because those claims are worth less than the cost of initiating an arbitration?

4. The Ninth Circuit held in *Heckman* that an arbitration agreement contains "an extreme amount of procedural unconscionability" if it permits a company to unilaterally modify the terms of the agreement "retroactively" and "without prior notice" 120 F.4th at 682-83. Is the Class Action Waiver unconscionable here, where Coinbase's Arbitration Clause permits it to effect such unilateral, retroactive modifications and where the Class Action Waiver implicitly and explicitly strips consumers of their ability to seek certain statutory claims and remedies?

## BACKGROUND

### I.   PLAINTIFFS' CLAIMS

Plaintiffs seek to recover hidden fees that Coinbase has deceptively charged for cryptocurrency trades in violation of California and New York's consumer protection statutes. The deceptiveness of Coinbase's hidden fee scheme is exemplified by the below example snapshot of an "Order Preview" that Coinbase provides consumers prior to the completion of a simple buy transaction (Compl. ¶2).

3



Plaintiffs allege that "[a] reasonable consumer presented with this Order Preview would expect that Coinbase charges only $3.74 in fees in connection with the previewed transaction because the Order Preview explicitly states that the 'Coinbase fee' is $3.74." *Id.* ¶3. But Coinbase actually "charges the consumer roughly $4.70 in fees." *Id.* Instead of clearly disclosing to consumers the exact amount that Coinbase charges, the company hides a portion of its fees in the "price" it quotes. *Id.* ¶4. *See also* Answer ¶4 (admitting that Coinbase "charges a spread").

As set forth in Plaintiffs' Complaint, "[t]he 'price' Coinbase quotes consumers in a simple buy transaction on its Order Preview (like the one above) is 1% higher than the market price of the cryptocurrency that Coinbase shows elsewhere on its website and mobile application," including on the "Trade Page" where a transaction is initiated. Compl. ¶¶4,18. That undisclosed 1% difference between the "price" quoted and the market price goes directly to Coinbase as a hidden fee, which Coinbase refers to as the spread (the "**Spread Fee**"). *Id.* ¶4. Coinbase collects a similar 1% Spread Fee in sell transactions by quoting consumers selling a cryptocurrency a price that is 1% lower than the market price, and its hidden Spread Fee increases to 2% for transactions in which consumers convert one cryptocurrency to another. *Id.*

Instead of clearly and conspicuously showing the Spread Fee on the Order Preview, Coinbase hides information about the Spread Fee in the website equivalent of fine print: the "tooltip" (i.e., the question mark) next to the term "price" on the Order Preview. *Id.* ¶27. If—and only if—a consumer

1    clicks on the tooltip, Coinbase redirects the consumer to a page that states: "The price of cryptocurrency

2    changes frequently based on market conditions. The price quoted includes a 1.00% spread. Learn more

3    about spread here." *Id.* Plaintiffs allege that that tooltip is insufficient to warn consumers of the Spread

4    Fee because "[c]onsumers have no reason to click on the tooltip next to the term 'Price' on the Order

5    Preview" because—as Coinbase admits[2]—the term "Price" that Coinbase shows on the Trade Page,

6    where a transaction is initiated, and elsewhere on its website is used to denote the current market price

7    of the cryptocurrency. *Id.* ¶28. "Consumers cannot be expected to confirm that Coinbase has not

8    changed the definition of the term 'Price' from one page to the next without warning." *Id.* In addition,

9    Plaintiffs allege that the text of the tooltip is insufficient because it does not specify what the Spread Fee

10   is one percent of, or how much it actually amounts to. *Id.* ¶27.

11       Although Coinbase has changed its Order Preview over time, Coinbase has always covertly

12   switched the price between the Trade Page and the Order Preview, and it has always hidden the Spread

13   Fee from consumers. *Id.* ¶55.

14   **II.   COINBASE'S ONE-SIDED ARBITRATION CLAUSE IS NOT BILATERAL
         AND STRIPS CONSUMERS OF SUBSTANTIVE CLAIMS AND REMEDIES**

15       **A.   The Arbitration Clause Is One-Sided In Coinbase's Favor**

16       Coinbase requires users to agree to a User Agreement that it drafts when they create a Coinbase

17   account (which is required to complete transactions on the Coinbase platforms), and Coinbase

18   periodically updates the agreement and requires users to agree to its new terms. *See, e.g.*, Nacoste Decl.

19   ¶¶7, 8; Nacoste Ex. 6 at p.1, AC § 1.9 & § 1.1. The January 2022 User Agreement on which Coinbase's

20   Motion relies, as well the version in effect when Plaintiffs commenced this action (Compl. Ex. A),[3]

21

22

---

23   [2]    Coinbase admits that the price it shows consumers on the Order Preview is not the price it
24   advertises elsewhere on its website. *See* Answer ¶61 ("Coinbase admits that the market price listed on the
     trade page for a given cryptocurrency does not include spread, while the price for that cryptocurrency on
     the Order Preview page includes spread.").

25   [3]    While Coinbase's Motion contends that each of the Plaintiffs agreed to the January 2022 User
26   Agreement, conspicuously absent from the Motion is any evidence that that is the operative version of the
     agreement between each Plaintiff and Coinbase. *See* Nacoste Decl. ¶¶7-8. Plaintiffs do not have access to
27   the same records as Coinbase does, but it is implausible that the operative agreement between each of
     them and Coinbase is not a more recent version of the User Agreement on its platform. *Compare* Compl.
28   ¶9 (alleging that each plaintiff agreed to the April 10, 2025, User Agreement), *with* Answer ¶9 (admitting
     that each plaintiff agreed to a user agreement, but failing to identify which agreement).  Presumably

contains an Arbitration Clause replete with one-sided provisions that benefit Coinbase and harm users.

First, §1.3 of the Arbitration Clause—entitled "Waiver of Class and Other Non-Individualized Relief" (the **Class Action Waiver**")—purports to waive Plaintiffs' right to assert their claims against Coinbase on a "class, representative, or collective basis" or to seek non-individualized relief. Nacoste Ex. 6, AC §1.3. The Class Action Waiver effectively bars low-value claims—like Plaintiffs' here.  That is because §1.4 of the Arbitration Clause requires consumers to pay fees ranging from $125 to $225 to commence with arbitration. *Id.,* AC §1.4; Compl. ¶¶97, 99.  If a consumer—like Plaintiffs—has a claim against Coinbase for $125 or less, just the cost of initiating arbitration outweighs any relief that can be awarded. *Id.* ¶99. Consumers who are deceived into paying Spread Fees of $125 or less to Coinbase cannot achieve an economically rational recovery through arbitration and are effectively deprived of their claims.[4]

Second, §1.6 of the Arbitration Clause expressly states that "arbitrator *shall* abide by the 'Limitation of Liability' section." Nacoste Ex. 6, AC §1.6. That "Limitation of Liability" provision (Nacoste Ex. 6, §8.2) protects Coinbase by requiring a "final *judicial* determination" that Coinbase acted with the requisite scienter before any "punitive" or "special" damages can be awarded—and prohibits altogether any damages arising from any "inaccuracies of any kind in [Coinbase's] websites." Because the Arbitration Clause does not exempt disputes concerning the Limitation of Liability from arbitration, users who are required to arbitrate their claims have no means to obtain damages for which a "final judicial determination" is required by §1.6.

Third, §1.9 of the Arbitration Clause gives Coinbase the unilateral ability to make any "material change[s] to" the Arbitration Clause and provides that the user's "continued use of the Coinbase Site and/or Services" constitutes an acceptance of any such changes. Nacoste Ex. 6, AC §1.9. The first page of the User Agreement promises up front that any changes "will not apply retroactively" (Nacoste Ex. 6 at 1), but §1.1 of the Arbitration Clause applies all changes retroactively.  Section 1.1 states that changes

Coinbase thinks it has something to gain from citing an older agreement, even though it has been superseded.

[4]    Courts have also found that the Class Action Waiver unlawfully strips consumers of their statutory right to seek public injunctive relief under California's consumer protection statutes. *See, e.g.*, *Kramer v. Coinbase, Inc.*, 105 Cal. App. 5th 741 (2024).

to the Arbitration Clause will apply to any "disputes that arose or involve facts occurring before the existence of this or any prior versions of the User Agreement." Nacoste Ex. 6, AC §1.1.

### B. The Arbitration Clause Requires Mass—Not Bilateral—Arbitration

Although the Arbitration Clause prohibits any class or collective actions to be initiated by a plaintiff, the iteration in the January 2022 User Agreement that Coinbase's Motion relies on (Nacoste Ex. 6) *requires* mass arbitration if "there are one hundred (100) or more individual Requests of a substantially similar nature filed against Coinbase by or with the assistance of the same law firm, group of law firms, or organizations." Nacoste Ex. 6, AC §1.8. Unlike earlier versions of the user agreement, which provided for bilateral arbitration to resolve disputes before Coinbase unilaterally modified them,[5] the so-called "Batch Arbitration" provision of the Arbitration Clause requires AAA to "administer the arbitration demands in batches of 100 Requests per batch." *Id.* The provision requires AAA to "appoint one arbitrator for each batch;" and "provide for the resolution of each batch as a single consolidated arbitration with one set of filing and administrative fees due per side per batch, one procedural calendar, one hearing (if any) in a place to be determined by the arbitrator, and one final award." *Id.* Users are not permitted to opt out of batch arbitration.

Once a batch arbitration starts, each user has only a limited ability to participate in the adjudication of the case. For example, all 100 users in any given batch are limited to a combined "three depositions *per side* in each arbitration or Batch Arbitration proceeding." *Id.*, AC § 1.4. Moreover, individual users who seek to challenge the application of the Batch Arbitration process to their claim must separately arbitrate why their claim does not "arise out of or relate to the same event or factual scenario" as claims filed by other users—whose filings "shall be kept confidential" and to which only the filing user is privy. *See id.*, AC §§1.4, 1.8. Coinbase, of course, will be on the other side of each batch. So, while individual users will be in the dark as to how the batch is being adjudicated, Coinbase will know everything that is going on.

---

[5]     *See* Nacoste Ex. 5, §8.3 (Dec. 18, 2020 Coinbase User Agreement); Nacoste Ex. 9, §7.2 (Oct. 5, 2017 Coinbase User Agreement); Nacoste Ex. 15, §8.3 (Jan. 31, 2019 Coinbase User Agreement).  *See also* Nacoste Decl. ¶¶7(a)(iv), 8(b)(iv).

### C.    Challenges To The Validity Of The Class Action Waiver Must Be Made In Court

The Arbitration Clause states that "all Disputes arising out of or relating to the Section entitled 'Waiver of Class and Other Non-Individualized Relief,' including any claim that all or part of the Section … is unenforceable, illegal, void or voidable … shall be decided by a court of competent jurisdiction and not by an arbitrator." Nacoste Ex. 6, AC §1.6. Coinbase attempts to chill any such challenges, though, by stating in the Arbitration Clause that Plaintiffs must pay Coinbase attorney's fees if their challenge is unsuccessful—but Plaintiffs receive no fees if they prevail. *Id.*, AC §1.7.

The Arbitration Clause also permits Plaintiffs to litigate their claims in court if the Class Action Waiver is invalid or unenforceable. The Arbitration Clause says that "if a court decides … that the limitations of … [the] 'Waiver of Class and Other Non-Individualized Relief' are invalid or unenforceable as to a particular claim or request for relief (such as a request for public injunctive relief) … that particular claim or request for relief (and only that particular claim or request for relief) shall be severed from the arbitration and may be litigated in the state or federal courts located in the State of California." *Id.*, AC §1.3.

### ARGUMENT

### I.    THE ARBITRATION CLAUSE REQUIRES A COURT TO DECIDE PLAINTIFFS' CHALLENGE TO THE CLASS ACTION WAIVER.

Coinbase incorrectly argues that the parties agreed to let an arbitrator "decide any gateway questions regarding the scope or enforceability of the" Arbitration Clause. Mot. at 9. That is not true. The Arbitration Clause states that "all Disputes arising out of or relating to the Section entitled 'Waiver of Class and Other Non-Individualized Relief,' including any claim that all or part of the Section … is unenforceable, illegal, void or voidable … *shall be decided by a court of competent jurisdiction* and not by an arbitrator." Nacoste Ex. 6, AC §1.6. Here, Plaintiffs challenge the legality and enforceability of that section. Plaintiffs argue that Coinbase's Class Action Waiver violates California's *Discover Bank* rule (§II, *infra*) and, alternatively, that the entire Class Action Waiver is unenforceable because it is unconscionable (§III, *infra*). The Arbitration Clause plainly requires a court and not an arbitrator to consider challenges like the one Plaintiffs are making to the Class Action Waiver section of the User Agreement. This Court is where these claims belong.

8

## II.    THE CLASS ACTION WAIVER VIOLATES THE *DISCOVER BANK* RULE

The Arbitration Clause's Class Action Waiver is invalid and unenforceable under *Heckman*, 120 F.4th at 689. In *Heckman*, the Ninth Circuit invalidated a class action waiver in a user agreement pursuant to California's *Discover Bank* rule, under which class action "waivers in consumer contracts of adhesion are unconscionable." *Id.* In so holding, the Ninth Circuit acknowledged that *Concepcion*, 563 U.S. at 352, had held that the FAA preempts the *Discover Bank* rule when it poses an obstacle to the FAA's objectives. But *Heckman* explained that the FAA does "not preempt California's *Discover Bank* rule" when the rule does not "pose[] an 'obstacle' to objectives of the FAA." 120 F.4th at 689-90.

As in *Heckman*, application of the *Discover Bank* rule in this case poses no obstacle to the objectives of the FAA. The User Agreement contains a mass-arbitration provision and—as *Heckman* explained when it examined a user agreement with a similar mass-arbitration provision—"the FAA does not preempt California's *Discover Bank* rule as it applies to mass arbitration." 120 F.4th at 689-90. In addition, application of the *Discover Bank* rule also does not pose an obstacle to the objectives of the FAA here because Plaintiffs could not "effectively … vindicate [their] statutory cause[s] of action in the arbitral forum," where it costs more to initiate proceedings than each Plaintiff's claims are worth. *Green Tree*, 531 U.S. at 90.

The Class Action Waiver violates the *Discover Bank* rule because "[1] the waiver is found in a consumer contract of adhesion in a setting in which disputes between the contracting parties predictably involve small amounts of damages, and … [2] it is alleged that [Coinbase] has carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money." *Discover Bank*, 36 Cal.4th at 162-63. As a result, the Class Action Waiver is invalid and unenforceable.

### A.    The *Discover Bank* Rule Is Not Preempted Under *Heckman*.

*Heckman* held that "the FAA does not preempt California's *Discover Bank* rule as it applies to mass arbitration." 120 F.4th at 690. Considering the Supreme Court's ruling in *Concepcion*, the *Heckman* court explained that the type of arbitration "envisioned by Congress when it passed the FAA in 1925" was traditional "bilateral arbitration"—***not mass arbitration***. *Id.* at 689-90 (quoting *Concepcion*, 563 U.S. at 349). The Ninth Circuit reasoned that, although "some parties may and sometimes do agree to aggregation of arbitration claims," the FAA would not preempt *Discover Bank* as

9

1    to agreements incorporating mass arbitration procedures because "such parties would not be agreeing to

2    arbitration as envisioned by the FAA." *Id.* at 689-90 ("the *Discover Bank* rule poses no ... obstacle [to

3    the FAA's objectives], because [mass arbitration] procedures do not apply to the forms of arbitration

4    covered by the FAA. We therefore hold under *Discover Bank* that the ... class action waiver is

5    unconscionable and unenforceable."). The same is true here.

6         The arbitration clause at issue in *Heckman* had a "batching" provision that required mass

7    arbitration instead of traditional bilateral arbitration "whenever more than five cases involve[d] common

8    issues of law or fact." *Id.* at 678, 683 (agreement "contemplate[d] that cases with common issues or facts

9    will be batched, and that 'batched' claims are not resolved by individual arbitration"). *Heckman*

10   explained that the batching provision in the agreement eliminated FAA preemption concerns because

11   "[i]t is certainly beyond dispute that" the batch arbitration required by the agreement "is not arbitration

12   as envisioned by the FAA in 1925." *Id.* at 690; *see also id.* at 692 ("The scheme that New Era has

13   created, which among other arbitration novelties includes … 'batch proceedings,' is an entirely new

14   form of dispute resolution intentionally designed to avoid individual, bilateral adjudication of claims—

15   exactly the attributes of arbitration the Supreme Court in *Concepcion* recognized that the FAA protects.

16   Supreme Court precedent thus leaves no doubt that New Era's system of collective arbitration is not

17   what Congress set out to protect in the FAA.") (VanDyke, J., concurring).[6]

18        As in *Heckman*, the Arbitration Clause here contains a batching provision that requires mass

19   arbitration if "one hundred (100) or more individual Requests of a substantially similar nature [are] filed

20   against Coinbase." Nacoste Ex. 6, AC §1.8. That batching provision requires such demands to be placed

21   "in batches of 100 Requests per batch" and "provide[s] for the resolution of each batch as a single

22   consolidated arbitration with one set of filing and administrative fees due per side per batch, one

23

---

[6]      The Ninth Circuit discussed *Heckman* in *Jones v. Starz Ent., LLC*, 129 F.4th 1176 (9th Cir. 2025),
but did not address *Heckman*'s holdings on FAA preemption or unconscionability. The plaintiffs in *Jones*
had argued, as a matter of contract interpretation, that an arbitration agreement's "prohibition of 'class or
representative proceeding' preclude[d]" the "consolidation" of claims in arbitration. *Id.* at 1182. The court
rejected that argument, explaining that "[c]onsolidation is not the same as class or representative
arbitration." *Id.* In so doing, the court contrasted the consolidation in *Jones*—which involved "7,300
separate, individual bilateral arbitrations"—with the "mass arbitration protocol" in *Heckman*—which
involved batching claims. *Id.* Here, like in *Heckman*, Coinbase's Arbitration Clause requires batch
resolution and provides no mechanism for consumers to opt out of that batching process.

procedural calendar, one hearing (if any) in a place to be determined by the arbitrator, and one final award." *Id.* Because *Heckman* determined that batch proceedings—like the proceedings required by the Arbitration Clause here—are "not arbitration as envisioned by the FAA in 1925," "the FAA does not preempt California's *Discover Bank* rule as it applies" in this case. 120 F.4th at 690.[7]

> **B.    The *Discover Bank* Rule Is Alternatively Not Preempted Because Plaintiffs Cannot Effectively Vindicate Their Statutory Claims In Arbitration.**

Additionally, application of California's *Discover Bank* rule would also not stand as an obstacle to the objectives of the FAA here because Plaintiffs cannot "effectively … vindicate [their] statutory cause[s] of action in the arbitral forum." *Green Tree*, 531 U.S. at 90. The Supreme Court has declared that an effective vindication rule applies to arbitration. Under that rule, "claims arising under a statute designed to further important social policies may be arbitrated … *so long as the prospective litigant effectively may vindicate his or her statutory cause of action in the arbitral forum.*" *Id.* But "the FAA does not require courts to enforce contractual waivers of substantive rights and remedies." *Viking River Cruises, Inc.*, 596 U.S. at 653. That principle applies not only where an agreement "forbid[s] the assertion of certain statutory rights," but also where "filing and administrative fees attached to arbitration … are so high as to make access to the forum impracticable." *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 236 (2013). *See also Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 n.19 (1985) (if an arbitration clause operated "as a prospective waiver of a party's right to pursue statutory remedies … we would have little hesitation in condemning the agreement as against public policy"). "The rule that follows is this: the FAA does not mandate enforcement of an arbitration agreement that *effectively works* as a prospective waiver of substantive statutory rights or remedies." *Pover v. Cap. Grp. Cos. Inc.*, 2024 WL 4116000, at *6 (C.D. Cal. Aug. 9, 2024) (tentative ruling), *adopted*, 2024 WL 4116001 (C.D. Cal. Aug. 12, 2024).[8]

---

[7]    *Heckman* did not require the mass-arbitration provision at issue there to be triggered, which makes sense. To hold otherwise would require the federal preemption analysis to depend on the fortuity of how many other consumers were contemporaneously seeking to arbitrate batch-able claims—which consumers might not know until their arbitration is commenced.

[8]    Although some courts have limited the so-called "effective vindication" doctrine to claims arising from federal statutes, the Supreme Court expressly rejected that limitation in *Viking River Cruises, Inc.*, 596 U.S. at 653 n.5 ("Viking argued that the principle that the FAA does not mandate enforcement of

The Class Action Waiver here effectively waives Plaintiffs' right—and the right of countless members of the putative class—to pursue their statutory claims. Based on the AAA rules annexed to their Complaint, "a consumer who wants to proceed individually [in arbitration] would need to pay a $225 fee, and consumers proceeding by mass arbitration would generally need to pay at least $125 in fees for the right to participate in the mass arbitration." Compl. ¶97; *see also* Compl. Exs. C & D.[9] The Class Action Waiver effectively waives Plaintiffs' claims here because it would cost each of them more to *initiate* an arbitration than their claims are worth. Compl. ¶99.[10] "Economic reality dictates that [Plaintiffs'] suit proceed as a class action or not at all." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 161 (1974). *See also Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004) ("The realistic alternative to a class action is not 17 million individual suits, but zero individual suits, as only a lunatic or a fanatic sues for $30.") (Posner, J.). As the California Supreme Court observed in *Discover Bank*, "[a] company which wrongfully exacts a dollar from each of millions of customers will reap a handsome profit" and "the class action is often the only effective way to halt and redress such exploitation." 36 Cal. 4th 161. Here, Coinbase's scheme of stealing a small hidden Spread Fee off a vast but unknown number of users follows exactly that model. Because the Class Action Waiver effectively deprives Plaintiffs of any meaningful right to pursue their statutory claims in arbitration, the FAA does not preempt the *Discover Bank* rule as it applies to the instant Plaintiffs' claims.[11]

### C.    The Class Action Waiver Violates The *Discover Bank* Rule.

Under the *Discover Bank* rule, a class action waiver is invalid and unenforceable "when [1] the waiver is found in a consumer contract of adhesion in a setting in which disputes between the

---

provisions waiving substantive rights is limited to federal statutes. This argument is erroneous. The basis of this principle is not anything unique about federal statutes.").

[9]    Coinbase's Answer ¶97 admits that Plaintiffs have attached the May 2025 AAA rules applicable to consumer arbitrations. These rules apply to the arbitration pursuant to AC §1.4.

[10]    If the information-and-belief allegations in the Complaint are insufficient at this stage of the litigation to establish that Plaintiffs' claims are worth less than $125, Plaintiffs respectfully request the right to serve discovery requests on Coinbase under Fed. R. Civ. P. 56(d). Evidence needed to support Plaintiffs' allegations is unavailable to Plaintiffs absent discovery. *See* Taylor Decl. ¶2.

[11]    This same logic applies to every member of the putative class whose claims are worth less than the cost of the AAA fee to initiate an arbitration. Their right to pursue statutory claims has also been effectively waived.

contracting parties predictably involve small amounts of damages, and when [2] it is alleged that the party with the superior bargaining power has carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money." *Discover Bank*, 36 Cal.4th at 162-63. That is because such waivers "operate to insulate a party from liability that otherwise would be imposed under California law." *Id.* at 161. The Class Action Waiver in the User Agreement is plainly unenforceable under *Discover Bank*.

First, the User Agreement here is a contract of adhesion. As explained in *Discover Bank*, a "contract of adhesion" is "imposed and drafted by the party of superior bargaining strength, [and] relegates to the subscribing party only the opportunity to adhere to the contract or reject it." *See id.* at 160.[12] Here, the drafter of the User Agreement was Coinbase—a sophisticated entity that was in the position of superior bargaining power with Plaintiffs. Moreover, Coinbase imposed the User Agreement on Plaintiffs as a condition of registering on Coinbase's platforms.  And Plaintiffs only had the opportunity to adhere to the User Agreement or reject it by not proceeding to register as a user on the Coinbase's platforms (and thus being barred from completing any transactions on Coinbase's platforms), and they did so "in a setting in which disputes between the contracting parties predictably involve small amounts of damages." *Id.* at 162. Indeed, Plaintiffs allege that "the majority of" the putative class's individual damages will likely be less than $125. Compl. ¶99.

Second, Plaintiffs allege that Coinbase (the party with superior bargaining power) "carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money" by concealing the Spread Fee that is charges consumers who complete transactions on its platforms. *Discover Bank*, 36 Cal.4th at 163. Accordingly, "the class action waiver would at the very least effectively exculpate [Coinbase] from the alleged fraud perpetrated on the class members, which is enough to bring this case within the scope of the *Discover Bank* holding." *Gatton v. T-Mobile USA, Inc.*, 152 Cal. App. 4th 571, 587 (2007). The Class Action Waiver is therefore unenforceable under the *Discover Bank* rule.

---

[12]  California law governs because the User Agreement states that "the laws of the State of California, without regard to principles of conflict of laws, will govern this Agreement and any Dispute, except to the extent governed by federal law." Nacoste Ex. 6, §9.5.

## III.    THE CLASS ACTION WAIVER PROVISION IS UNCONSCIONABLE.

The Class Action Waiver is also invalid because it is unconscionable under California law. A provision in an agreement is unconscionable under California law "if one of the parties lacked a meaningful choice in deciding whether to agree and the contract contains terms that are unreasonably favorable to the other party." *OTO, L.L.C. v. Kho*, 8 Cal. 5th 111, 125 (2019). This doctrine requires a showing of both procedural and substantive unconscionability, "but they need not be present in the same degree." *Id.* California courts evaluate unconscionability using a "sliding scale." *Id.* "The more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa. If there is substantial procedural unconscionability, even a relatively low degree of substantive unconscionability may suffice to render the agreement unenforceable." *Heckman*, 120 F.4th at 681 (finding agreement unconscionable).

As set forth below, the User Agreement's Class Action Waiver contains a high degree of both procedural and substantive unconscionability and is therefore invalid and unenforceable.

### A.    Procedural Unconscionability.

Every contract of adhesion has some degree of procedural unconscionability under California law. *See Flores v. Transamerica HomeFirst, Inc.*, 93 Cal. App. 4th 846, 853 (2001) ("A finding of a contract of adhesion is essentially a finding of procedural unconscionability."). But the Arbitration Clause's procedural unconscionability extends far beyond that of the typical contract of adhesion. Specifically:

- The Arbitration Clause gives Coinbase the unilateral right to make "material change[s] to" the Arbitration Clause—including the Class Action Waiver. Nacoste Ex. 6, AC § 1.9.

- The Arbitration Clause provides that a consumer's "continued use of the Coinbase Site and/or Services" constitutes an acceptance of any such material changes. *Id.*

- Although the User Agreement tells consumers that changes "will not apply retroactively," in truth, the Arbitration Clause gives changes retroactive effect by "includ[ing] disputes that arose or involve facts occurring before the existence of this or any prior versions of the User Agreement." *Compare* Nacoste Ex. 6 at 1 *with id.*, AC §1.1.

The Ninth Circuit recently analyzed similar provisions in *Heckman* and found that they contained "an extreme amount of procedural unconscionability far above and beyond a run-of-the-mill contract-of-adhesion case." 120 F.4th at 683. *See also Peleg v. Neiman Marcus Grp., Inc.*, 204 Cal. App. 4th 1425, 1433 (2012) ("[A]n arbitration contract containing a modification provision is illusory if ... a contract change[] applies to claims that have accrued or are known."). The *Heckman* court observed that the modification clause used by the defendant before it, LiveNation, was particularly unfair because "customers may be required to visit the website again to access and use previously purchased tickets"— meaning that they had no choice but to accept any modified terms. 120 F.4th at 683. The same is true here. Coinbase holds assets for its users, including Plaintiffs, that cannot be accessed without using Coinbase's site. The result is that Coinbase presents its users with a Hobson's choice whenever it changes its terms: either accept the new terms or completely forfeit access to any assets stored on Coinbase's website. As *Heckman* found, that is unconscionable.

**B.    Substantive Unconscionability**

"Substantive unconscionability pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh or one-sided." *Heckman*, 120 F.4th at 683. Here, four features of the Arbitration Clause demonstrate that the Class Action Waiver is substantively unconscionable.

First, as discussed in § II.B, *supra*, the Class Action Waiver effectively bars Plaintiffs' claims because the cost of initiating an arbitration is greater than the value of each Plaintiff's claim. Because Coinbase's unlawful hidden Spread Fee is typically 1% of every buy or sell transaction, any given consumer would need to have transacted roughly $22,500 worth of cryptocurrency over the past four years for the value of their claims to equal the $225 fee charged to initiate an individual arbitration. *See* Compl. ¶97; *see also* Compl. Exs. C & D; n. 9, *supra*. The result is that the Class Action Waiver effectively bars the right to pursue statutory claims for the vast majority of Coinbase users—including Plaintiffs here. "[I]t is substantively unconscionable to require a consumer to give up the right to utilize the judicial system, while imposing arbitral forum fees that are prohibitively high. Whatever preference for arbitration might exist, it is not served by an adhesive agreement that effectively blocks every forum for the redress of disputes, including arbitration itself." *Parada v. Superior Ct.*, 176 Cal. App. 4th 1554,

15

1578 (2009); *Gutierrez v. Autowest, Inc.*, 114 Cal. App. 4th 77, 90 (2003) (same).

Second, California's Court of Appeal has found that the Class Action Waiver unlawfully strips consumers of their statutory right to seek public injunctive relief under California's consumer protection statutes. *See Kramer*, 105 Cal. App. 5th 741. That is substantively unconscionable under California law because corporations like Coinbase cannot use contracts of adhesion to strip consumers of their right to seek statutory remedies. *See, e.g.*, *Bridge Fund Cap. Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1004 (9th Cir. 2010) ("California law holds that mandatory waivers of non-waivable statutory rights ... are the sort of one-sided and overly-harsh terms that render an arbitration provision substantively unconscionable.").[13]

Third, the Arbitration Clause unfairly discourages Plaintiffs from challenging the Class Action Waiver provision by threatening the imposition of attorney's fees while offering them none if they prevail. The Arbitration Clause requires a consumer to assert in court any challenges to the Class Action Waiver and requires the consumer to pay Coinbase's attorney's fees if Coinbase wins in court—but consumers get no fees if they win. That one-sided attorney's fees provision "is substantively unconscionable because it deters [plaintiffs] from challenging the enforceability of the Arbitration [Clause]." *Storms v. Paychex, Inc.*, 2022 WL 2160414, at *14 (C.D. Cal. Jan. 14, 2022).

Fourth, the Arbitration Clause unlawfully prohibits Plaintiffs from challenging the validity of the Limitation of Liability provision (Nacoste Ex. 6, § 8.2) in any forum. The Limitation of Liability expressly requires a "final *judicial* determination" before any of the damages described in the section can be awarded, but the Arbitration Clause does not exempt disputes concerning the Limitation of Liability from arbitration, thereby preventing Plaintiffs from obtaining a "final judicial determination" and thus any damages. The Arbitration Clause also makes clear that an arbitrator cannot invalidate the Limitation of Liability provision because it dictates the "arbitrator *shall* abide by the 'Limitation of Liability' section." *Id.*, AC §1.6. The complete inability to challenge the validity of the Limitation of Liability provision is particularly troubling here because the provision itself is unconscionable. *See, e.g.*, *Nelson v. Dual Diagnosis Treatment Ctr., Inc.*, 77 Cal. App. 5th 643, 662 (2022) ("[L]imitations on one

---

[13]      Plaintiffs do not seek public injunctive relief here, but the unlawful waiver is nonetheless relevant because it goes to the unconscionability of the Class Action Waiver as a whole.

party's remedies support a finding of substantive unconscionability."); *Harper v. Ultimo*, 113 Cal. App. 4th 1402, 1407 (2003) ("[T]he limitation of damages provision here is yet another version of a 'heads I win, tails you lose' arbitration clause that has met with uniform judicial opprobrium.").[14]

None of the cases that Coinbase cites stands for the proposition that the Class Action Waiver is not unconscionable. Coinbase relies heavily on decisions finding that the "delegation clause" in its User Agreement is not unconscionable. Mot. at 11 (*citing Aggarwal v. Coinbase, Inc.*, 685 F. Supp. 3d 867, 880-82 (N.D. Cal. 2023); *Pearl v. Coinbase Glob., Inc.*, 2023 WL 1769190, at *6-7 (N.D. Cal. Feb. 3, 2023); *Donovan v. Coinbase Glob., Inc.*, 649 F. Supp. 3d 946, 954 (N.D. Cal. 2023); *Kattula v. Coinbase Glob., Inc.*, 2023 WL 4373385, at *3 (N.D. Ga. July 6, 2023)). Those cases—all of which predate *Heckman*—are irrelevant because here Plaintiffs do not challenge the delegation clause: they challenge the Class Action Waiver. That provision is unconscionable for the reasons set forth above.

## IV.  BECAUSE THE CLASS ACTION WAIVER IS INVALID AND UNENFORCEABLE, PLAINTIFFS CAN BRING THEIR CLAIMS IN COURT

The Class Action Waiver's savings clause provides that, if the "Waiver of Class and Other Non-Individualized Relief" subsection is "invalid or unenforceable as to a particular claim or request for relief … you and Coinbase agree that that particular claim … shall be severed from the arbitration and may be litigated in the state or federal courts located in the State of California." Nacoste Ex. 6, AC § 1.3. Because the Class Action Waiver is invalid and unenforceable, Plaintiffs are permitted to proceed in this Court. Coinbase's Motion should therefore be denied.

## CONCLUSION

Coinbase's Class Action Waiver is invalid and unenforceable under *Heckman*, 120 F.4th 670, and California law. Coinbase's Motion should therefore be denied.

---

[14]    Although this provision is not technically part of the Class Action Waiver, it is relevant to the unconscionability analysis here because the Arbitration Clause excludes it from the provisions delegated to an arbitrator—meaning that it must be left to a court.

DATED: May 23, 2025

Respectfully submitted,

/s/ Benjamin A. Taylor
Benjamin A. Taylor

**KESSLER TOPAZ**
**MELTZER & CHECK, LLP**
Jennifer L. Joost (Bar No. 296164)
One Sansome Street, Suite 1850
San Francisco, CA 94104
Tel: (415) 400-3000
Fax: (415) 400-3001
jjoost@ktmc.com

-and-

Joseph H. Meltzer (*pro hac vice forthcoming*)
Melissa L. Yeates (*pro hac vice*)
Jordan E. Jacobson (Bar No. 302543)
Matthew Macken (*pro hac vice forthcoming*)
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
jmeltzer@ktmc.com
myeates@ktmc.com
jjacobson@ktmc.com
mmacken@ktmc.com

**JOSEPH HAGE AARONSON LLC**
Gregory P. Joseph (*pro hac vice*)
Mara Leventhal (*pro hac vice*)
Christopher J. Stanley (*pro hac vice*)
Benjamin A. Taylor (*pro hac vice*)
800 Third Avenue, 30th Floor
New York, NY 10022
Tel: (212) 407-1210
Fax: (212) 407-1280
gjoseph@jhany.com
mleventhal@jhany.com
cstanley@jhany.com
btaylor@jhany.com

*Counsel for Plaintiffs*